Good morning, Your Honors. My name is Bob Kershaw, and I represent the appellant. In this case, I wanted to make sure that it's clear that we do not concede that this was a facially valid warrant. And we believe that this warrant was largely a conclusionary warrant, which was based upon assumptions made by Ms. Fassauer. And those assumptions were that, in this case, based upon the letters, that all of the purchase orders and the invoices were false. The problem is, is that there was never any evidence adduced during the balance of the affidavit which would support the fact that there was any loss that was ever incurred to the company, Central Concrete Supply Company. And we believe that that was the starting point. And as the Court knows, that a warrant based on mere conclusions of the affiant gives the magistrate virtually no basis for making a judgment regarding probable cause. The other issue I wanted to mention before I get to Frank's issue is that, as the Court knows from the old case of Aguilar v. Texas, where you have an unidentified informant, the affiant must set forth some underlying circumstances which the officer concluded from the information that the information from the anonymous informant was credible, and that the informant spoke with some degree of personal knowledge. Now, the letters themselves did not contain sufficient details from which to prove that the person or persons writing the letters spoke with personal knowledge. Now, or with any degree of reliability. Now, we believe that Judge Hamilton erred by denying Frank's motion. In that regard, we set forth six specific statements in the affidavit that we maintained were false. And we did come forward with evidence in the form of a declaration from Mr. Stefani, a declaration from Mr. Beecher, a mechanic that worked at Central Concrete Supply Company, from Mr. Berzack, his family law lawyer, and from Mr. Dahmer, a civil lawyer. And we also provided the Court with an exhibit that we put together from records from the State Board of Equalization. Now, of the six statements that we refer to in the affidavit that we think are false, the most egregious one that I see is the one pertaining to the allegation that Mr. Stefani filed false sales tax reports with the State Board of Equalization. Now, the affidavit is clear that Ms. Fassauer went to the State Board of Equalization office, and she says several things. I reviewed and had access to the records on file from Mr. Stefani with the State Board of Equalization. I also spoke to Mr. Reboy, an investigator with the State Board of Equalization. Now, what we did is we put together an exhibit for the trial court judge to review regarding the State Board of Equalization records. And we did that to show and to prove that Mr. Stefani filed accurate, true and correct sales tax reports with the State Board of Equalization for each and every month during the relevant period of time from August of 2000 to November of 2003. So you must assume, based upon what Ms. Fassauer says, she also had access to those records. The problem is she went further in saying that regarding another co-defendant. Roberts. She not only looked at the records according to what you say, but she also talked with an investigator, Mr. Reboy, isn't that correct? She did. And she stated that in her affidavit. And she did. And I think that's highly significant because of what Mr. Reboy said regarding fraudulent schemes where people only report a portion of their gross sales and only pay a sales tax on a portion of fraudulent income. Well, let's assume that she's just simply mistaken. See, this is where I don't think that Ms. Fassauer is just mistaken, because Ms. Fassauer had access to the records themselves, Judge. So a person who has access to records must always fully understand them, and therefore your assumption is that she fully understood the tax records, and therefore that she Well, I think that she intentionally left out the records regarding Mr. Stefani. But the records aren't complicated. I mean, we gave you exhibits which showed each and every month that he filed them. And we also showed the money got from Central Concrete for the parts that were sold and delivered. If you add up that total amount of money for that month and you compare it to the gross sales and the gross money that Baykal was getting each month from Central Concrete Supply Company. Now, what she did, and this is where I think it becomes even more egregious, is you note in the last paragraph dealing with this subject, Ms. Fassauer comes forward and says that, well, as to the gross sales of Mr. Caldwell, there was a certain amount of gross sales that he reported, but he paid no tax. But strangely, she says nothing about the gross sales reported by Mr. Stefani. Now, the gross sales reported by Mr. Stefani show and prove that he did not follow a fraudulent scheme of any kind. The allegation in the affidavit is he filed false sales tax reports. And that's just simply not true. And these records say it is not true. It proves that they are not true. And she had those records. She says in one of the paragraphs, Judge, she says, I reviewed the record. So she can't come back now and say, well, I didn't look at them, or I inadvertently didn't look at them. So our position is, is that is one of the six statements that we clearly proved. We proved that that statement was false. And we came forward with that evidence, not only the exhibit, but the testimony and the declaration of Mr. Stefani and Mr. Beecher that kind of dovetails into that issue. Well, did you bring forth any invoices that matched the sales tax paid? To match what, ma'am? To match the sales tax paid. Yes. What we did, the purchase orders and the invoices really are not indicated in this analysis that we have here. What we did is we took the checks that were written each month from Central Concrete to Baycal Equipment. That month, take August of 2000, you have a gross amount on the check. Then what we did is we took that gross amount and we looked to see for that month in his monthly sales tax report, did he report the same amount of money as gross sales that corresponds to the particular check for that individual month? And if you go through each one of them, match up, I mean, with a difference of dollar, minor cents, in one case a dollar or something. But they match up, which show and prove that he got, you know, this amount of money this month from Central Concrete. And that month he reported that amount of money to the State Board of Equalization so that he was reporting those accurate amounts of gross sales tax. This is an extremely important point in the overall evaluation of this warrant. Because of the fact that maybe in Mr. Caldwell's case, who didn't report all of his gross sales, Mr. Stefani did. So if you want to say, as Mr. Reboy did, a person involved in a fraudulent scheme only reports a small portion like Mr. Caldwell, well, the reverse of that is true also, that Mr. Stefani reported all of his gross sales tax. And then the magistrate, this should have teed the magistrate into saying, well, let's wait a minute here. Roberts. I think it doesn't the government respond that the investigator or Ms. Fashauer's conclusion that the sales were fraudulent was at the heart of the way she characterized this. In other words, you say, well, if you compare the two, you'll find that the one is equal to the other. The invoices are equal to the amount reported. And it was isn't that maybe accurate, but isn't the government's response, she was convinced that it was fraudulent to begin with. And so he was reporting fraudulent taxes or fraudulent or making fraudulent reports because there was no such thing occurring. Well, but the problem with that is that gets you back into her first conclusion. And her first conclusion was, she said two things. This embezzlement occurred by the means of false purchase orders and invoices. And then she said another thing. There is no evidence in this case that there any of the parts billed for were ever delivered or installed on the truck. Now, that statement was false. That statement was wrong. There was evidence of that. And Mr. Stefani, in the declaration that he cited and in Mr. Beecher's declaration, we clearly showed that the evidence that shows that the parts were sold and delivered to the company was the repair work orders. There were some 8,500 pages of work orders. But what Ms. Fasshauer did, Judge, did anybody actually inspect and say, I inspected and, in fact, these parts were in there? Yes. But how would you know? See, here was this was our point. You can't tell if the company lost any money and you can't tell if all the purchase orders and invoices are false unless you compare the purchase orders and the invoices to these 8,500 pages of repair or work orders. That's what Mr. Stefani and Mr. Beecher were saying in their, in their declarations. So when you say there wasn't any evidence, yes, there was evidence that the parts were sold, not only sold and bought and delivered, but they were installed on the trucks. So if you just go to the repair orders, you take the purchase order, take the invoice. Purchase orders have part numbers. You then go, it's then the mechanic's duty to take the part, the part number, prepare a work order or a repair order, and it says this part was installed on this truck on this date, and we installed it. We, the mechanics, installed it, not Mr. Stefani, but we, the mechanics. So when you say that, well, Ms. Fasshauer just basically, and this is what she did, she assumed that all of the purchase orders and the invoices were false. But what would you ask, as a reasonably well-trained investigator, when Mr. Kutchum, the civil lawyer, brought this to the DA's office? You would say, well, how do you know that these are false or fraudulent? How do you know the company actually lost any money? And then they would have to respond, well, the inventory control system that we have is such that you can tell if the parts are installed on the trucks or not by going and pulling the corresponding repair work order at that time and matching them up and seeing that they were or they were not installed. So Ms. Fasshauer never got to that point. She never said, well, do you have any auditors? What did you – what did the auditors say from the company about whether the company actually lost any money or not? And that's why it's so important that you just can't rely on the blanket, conclusionary statement, all purchase orders and invoices were false, unless you take the next step, which was, as I mentioned, compared to the work orders, or bring in an auditor from the company where the auditor could say, we did an audit, and under our inventory control system, we ran these and there was a loss. Well, what she was trying to do was to establish probable cause, wasn't she? Right. But if you don't get to the point where there's at least some evidence that there was a loss, which is the basis of the crime of theft or embezzlement. Were there receipt books that were missing? And I did – well, what they say was not found in this one day, this just one day that they went to look at the South San Francisco plant. They say, well, we didn't find any evidence of business records pertaining to Baycal equipment. Well, we explained that in Mr. Stefani's declaration, where he says, well, I ran the business out of my home. The records pertaining to Baycal equipment were in my home in San Carlos. That's what he says in the affidavit. So the fact that they didn't find any records of Baycal at the South San Francisco plant is not unusual. So – Now, there were receipt books, weren't there, that were missing? Well, look, there were purchase order books. Okay. And there were several that were missing. And several of them they did not find at that location. But this – here's what this – those forms are in triplet. Now, what happens when they did the purchase orders is the two copies and the third copy are supposed to go to the plant or to the office in San Jose. So the fact that they may not have been able to find any of the purchase order – the last copy of the purchase order books in South San Francisco doesn't mean that any crime was committed because there's – I mean, there's no way to get rid of the original. The original goes down to San Jose. So we're – you know, we were just saying – we're saying that, look, we think we came forward with enough evidence. And it justified the – the granting of the Francine. We – and we came forward with enough to show that. And the most egregious is the State Board records. And the second one is there is no evidence that the parts were ever delivered. And the third one is that it just was a conclusion based on an assumption. And the assumption is based upon the letters. You have some other points you want to make? Well, then you get into the other evaluation, assuming that there is enough there and you delete the false statements and you add a correct or truthful statement. And I outlined those in my brief. Is there then – you have to retest for probable cause. And our position is, is you put the truth into this warrant, then the magistrate would have said, wait a minute, something's wrong here. You've got to go back. You've got to look and see was there a lawsuit. What did the auditors say? Did you compare any, just any of the purchase orders to the repair work orders? And then when the magistrate knows that, look, you know, you're wrong on this with the State Board of Equalization, Mr. Stefani filed true and accurate reports with those guys. So wait a minute. We better rethink this. And that's why we should have the Franks hearing to cross-examine and confront Ms. Fasauer. And we don't believe you can save the warrant by the good-faith exception because in the fact that it's so clear that she had those records, she had access to those records, and how can you say she's acting in good faith when it is so clear that she deliberately left out the information about Mr. Stefani, but she put the information in there about Mr. Calvo? And I need to reserve at least a minute in closing. We have 314. So it's reserved for rebuttal. Good morning. May it please the Court. My name is Assistant United States Attorney Joseph Fazioli, and I'm representing the United States in this case. The district court did not err in denying defendant's request for a Franks hearing, challenging the search warrant of his resident, which found his unregistered machine gun and silencer. The government's primary arguments in this here are twofold. First, that the search warrant stripped to its uncontested facts supports probable cause. And secondly, that the defendant was not entitled to a Franks hearing because as the district court correctly found, he did not be his burden of proving any deliberate falsehoods in the warrant, that factual finding was not clear error. As to the first argument, the following uncontested facts in the search warrant support probable cause. Two letters initially, two letters had been sent to defendant's employer, Central Concrete, alleging that he was embezzling from Central Concrete by using false purchase orders placed to a company called Baycal. An investigation subsequently revealed that Central Concrete had paid over $400,000 to Baycal for supposed truck, for truck repairs. Defendant, while working at Central Concrete, generated and initialed the Baycal purchase orders. The $400,000 in money that was paid to Baycal was paid into defendant's bank account. A search of Central Concrete's maintenance records found no purchase orders or repairs from Baycal. A visual inspection of four Central Concrete trucks found indications that Baycal had not actually completed the repairs for which they were paid. There had been a drive-by of the defendant's house, which was the address that was linked to Baycal, indicated that it was a home and not a garage or a factory. Baycal was unincorporated in the State of California, unknown to competitors in the industry, unlisted in telephone directories, and did not advertise its services. It was run out of the defendant Stefani's home, allegedly, which was the subject of the search warrant. The above uncontested facts support probable cause that the defendant was involved in embezzlement. Secondly, the district court correctly found that the defendant had not met the high burden for a Franks hearing since he submitted no proof of a deliberate falsehood in the search warrant. Now, the district court's order denying Stefani's Franks motion said Stefani has submitted no evidence that Agent Fassauer, who was the search warrant affiant, submitted deliberate falsehoods or acted with a deliberate disregard for the truth. He contests the accuracy of many of the allegations in the search warrant, but he does not provide any evidence that Fassauer intentionally or recklessly misled the state court. The defendant has not met his high burden of proving that there are any deliberate falsehoods in the warrant. The district court's factual finding was not clear error. At most, he is alleging negligence on the part of Ms. Fassauer. That is not sufficient to have obtained a Franks hearing. I would take an example. We had a great deal of discussion, for example, about the state taxes. And as I read the affidavit, there is at least a pretty strong – well, there's an affirmative statement that after reviewing the records – let's see if I can find it – upon review of the California Board of Equalization Records, it is my belief that Stefani and Caldwell falsely reported sales taxes. What was that belief based on? Well, my understanding is that it's based on the belief of the inspector that the sales had never actually taken place. And to that extent, to the extent that there were false sales, then you have false sales tax returns, even if – just the fact that – mere fact that there were false sales taxes. I mean, I read this to suggest that, connecting up with the paragraph a few – a little higher on the page, there's the report from Mr. Reboy that ordinarily when people file, show a little bit, but the bogus income is not correctly reported, you know, the tax people generally don't care whether – whether you over-report or you pay sales that may have been fraudulent, which seems to be the case here. I don't understand what the tax offense would be, what the tax crime would be. And this seems to say that there's a tax crime. And you're now suggesting that what she meant was that the sales were false. Maybe she paid taxes that she shouldn't have paid, but that's not what I get from the affidavit. I read it to say that something's wrong, that the taxes are being underreported the way they usually are, which doesn't seem to match up if she actually had looked at the Board of Equalization Records. Well, I would say the best elucidation as to what Inspector Fasshauer thought about the Board of Equalization Records is not only what's in the warrant, but also in her supplemental declaration. And she addresses that at Excerpts of Record 268. This was in a supplemental declaration in which she put forward some of her thought process regarding the – Well, the supplemental declaration is the one that's been objected to by Mr. Stefani as inappropriate because there was – it should have been stricken by the court. Isn't that the one you're referring to? Yes. Yes. That was the one that was – Are you relying on that? Did the judge rely on that? I did not see that the judge relied on the supplemental declaration in her order denying the Franks motion. And that supplemental declaration was not presented for the issue of bolstering the probable cause in the original affidavit. It addressed some of the defendant's issues that were raised in the initial Franks motion. The difficulty for me for using that is that that suggests, well, we're not really going to have a hearing. We'll just let the investigator tell her version of the story without cross-examination. The more you have to look to something outside the affidavit to explain the affidavit, the more the crack of the door opens a little bit for the possibility of needing a Franks hearing. So I kind of – I'm a little wary of encouraging you to refer to the supplemental declaration. It solves one problem. It may cause another. I'm referring to the supplemental declaration simply if the Court's asking for the thought process of Ms. Fasshauer regarding that. Let me get more. The paragraph here says should be investigated for potential State and Federal tax evasion. And when I ask you to explain what's going on here, you're suggesting false sales. Was there anything that gave the investigator a basis to suspect tax evasion? There were indications that the defendant had made a false statement in his – in that DOE file and that he made – he stated incorrect information about his employment staffs. Does that amount to tax evasion? Not necessarily. Is it a crime to pay taxes that you don't owe? Generally, I would say no. It's not a crime to pay taxes you don't owe. But I will say to the extent the Court is concerned about the section about the board of equalization issue, I would again reiterate that I don't think there's any evidence that this statement was made deliberately false or with a – or was recklessly. Secondly, government would also submit that the – that the section of the warrant that talks about board of equalization is not necessary for the finding of probable cause in the warrant, and that even if that section, if everything related to the board of equalization were excised from the warrant, that the facts that I summarized at the beginning of my argument, which are – did not raise the board of equalization, that all of those facts, which are uncontested, would be sufficient to establish a finding of probable cause against – against the defendant. And so I think that to the extent the Court is concerned that there may have been an element of sloppiness or even arguably recklessness, I'm not conceding that. But if the Court is concerned, has concerns about the statements regarding the allegations of tax evasion, that this warrant has significant facts about establishing or seeking to establish a finding of embezzlement that I put forward that support a – that support a conclusion that Baycal was, in fact, not an active entity and that it had been receiving monies for repairs that had not been completed. So I – and I do not think there's evidence that there was deliberate falsehood in regard to the particular board of equalization statements. At worst, I think it's negligence, and that's not enough for a Franks hearing. But I think even if you take that – everything related to the board of equalization or the tax evasion allegations out, the remaining warrant standing on its own is sufficient for – for – is sufficient so that the defendant does not merit a Franks hearing. And I assume that's the case. Roberts, I'm not sure if you're referring to the – the evidence that the mechanic said various things about the installation of parts or how to trace parts. I think you're referring to the Beecher – the Beecher declaration. This is essentially just the opinion of the – of Mr. Beecher. As I would say to that, is that that – that essentially challenges one of the conclusions of – challenges one of the conclusions of Agent Fasshauer's affidavit, which is that the parts had not been repaired. But I would submit that that is not evidence that Inspector Fasshauer was including any kind of deliberate falsehood when she – when she mentioned in her affidavit that they had done an inspection of those four central concrete trucks. Mr. Beecher's declaration does not refute that that inspection took place. It simply says that, you know, based on his experience, that, you know, that there's certain ways in which you cannot commit a visual inspection that would show – that essentially attempting to undermine what Fasshauer put forward in an affidavit. But he was not a recipient witness for that search. Well, did Beecher make an inspection and say, in fact, the part's been installed? I'm sorry? Did Beecher make an inspection and say, in fact, I found the part that they said wasn't there and it's actually there? It's not my knowledge that Mr. Beecher conducted an inspection of the four specific trucks that – that had taken place. And in any event, even if – even if there had been an issue of that the inspection – even if the issues that – assuming for argument's sake that the – that the questions that Mr. Beecher raised, I think, about acid affecting concrete and things, if that were accurate in fact, that does not necessarily prove that the statements that Inspector Fasshauer put in her warrant about the parts and services not having been completed were – were deliberately false or in any way reckless. Again, at worst, the defendant is raising issues of negligence, that perhaps there was a different conclusion that Inspector Fasshauer could have raised. But as the law indicates, the fact that there is an alternative conclusion that could have been reached in a search warrant affidavit does not necessarily mean that it's a deliberate falsehood or a reckless – reckless statement that merits a Franks hearing. It's a fairly high bar that I think that the district court was correct in saying that the defendant has – had presented no evidence that there were any kind of deliberate falsehoods or reckless statements in the warrant. Unless the Court has any additional questions, I'm prepared to submit on the papers. Roberts. Thank you. Verbala. Verbala. First of all, my understanding is, is that clear proof of deliberate or reckless omissions is not required and that that level of proof is reserved for the evidentiary hearing, which we were asking for. Mr. Fazioli mentioned that – he mentions a couple of things. The standard is substantial showing, isn't it? That's true. And we made – I think we made a substantial showing through Mr. Beecher, Mr. Stefani, and bringing forth the records from the State Board of Equalization. Mr. Beecher said a lot more than what Mr. Fazioli just mentioned that he said. Mr. Beecher said, number one, here's how you tell whether or not the parts were installed on the vehicles or not. You have to go to the repair work orders. It's the mechanics that prepare the repair work orders, not Mr. Stefani. That's the first thing he said. The second thing he brings up is that you can't tell whether these parts are installed or not installed on a particular vehicle by looking at the vehicle some four or five months later because of the nature of the cement trucks and the way that the acid eats away at the parts. And he also mentioned in his declaration that he had had an opportunity to talk to Ms. Fazioli about this to Ms. Fazioli and explain to her that – what was going on, how you tell whether or not the parts are installed or not, and we refer to that in our briefing. The other thing is I don't have time to go through each and every little point that Mr. Fazioli raises as to why he thinks there's probable cause in the warrant in the first place. I answered those, and I went through them in great detail. In preparing my argument, I wrote them out. It took me like 45 minutes to write them all out, so I don't have time to respond to them. I just have to refer to my brief. I tried to answer them. Things like where he would say, well, BACAL wasn't incorporated. Well, that doesn't matter. That doesn't show anything. It doesn't prove anything. And there were a whole lot of things like that that were in the warrant. Now, my position is simply this. Those records from State Board of Equalization are so strong evidence for us that we should have been given a Franks hearing. And secondly, when she says there is no evidence that the parts were ever delivered or installed, that is not a true statement. That is just not correct. There was evidence. There was 8,500 pages of repair work orders that would have proved that those parts were not only delivered, but they were installed on those vehicles, just like Mr. Beecher said in his declaration and just like Mr. Stefani was saying. So for all of those reasons, we believe we should have had a Franks hearing to start with. You can't bolster this warrant or affidavit by coming in with a supplemental declaration after the fact. The warrant is tested on the four corners of the warrant. You can't go outside the warrant in any event. But that just shows the weakness of their argument when they have to come forward with that kind of evidence. And what basically we're saying is, well, we have a right to cross-examine her. And give us that right, give us a fair hearing, let us shuffle it all out, and then we'll see whether or not this warrant can stand or fall. I don't think it can. Thank you. Roberts. Thank you. Thank both counsel for their argument. The case just argued is submitted. The next case originally listed for argument today has been rescheduled due to illness of counsel to March 21st. So we'll proceed to White v. City of Sparks. Thank you.
judges: B. Fletcher, Clifton, Shea